# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**PHOENIX ENTERTAINMENT PARTNERS, LLC,**

      **Plaintiff,**

**v.**                                                  **Case No: 6:16-cv-80-Orl-31DAB**

**ORLANDO BEER GARDEN, INC.,**

      **Defendant.**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:** Motion for Default Judgment (Doc. No. 13)
>
> **FILED:** March 8, 2016
>
> ---
>
> **THEREON** it is **RECOMMENDED** that the motion be **DENIED WITHOUT PREJUDICE**.

Plaintiff ("PEP") moves for entry of a damages award and a permanent injunction against Defendant Orlando Beer Garden, Inc.,[1] in this action alleging trademark infringement, common law unfair competition, and violations of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla.Stat. §501.211. Defendant has not answered the Complaint or otherwise appeared, and the Clerk entered a default on February 19, 2016 (Docs. 11, 12). The instant motion is accompanied by the Declaration of Kurt Slep, President of Phoenix Entertainment Partners, LLC.

---

[1] The Complaint also names Diane M. Calo as a defendant, but she has not appeared in this action and Plaintiff's claims against her were dismissed with prejudice, on Plaintiff's Notice of Voluntary Dismissal (Docs. 14-15).

(Doc. 13-1). Upon review of the papers, it is **respectfully recommended** that the motion be **denied.**

### I. Legal Standard

A district court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear pursuant to Federal Rule of Civil Procedure 55(b)(2); *DirecTV, Inc. v. Griffin*, 290 F.Supp.2d 1340, 1343 (M.D. Fla. 2003). The effect of the entry of a default is that all of the factual allegations in the Complaint are taken as true, save for the amount of unspecified damages. Thus, if liability is well-pled in the complaint, it is established by the entry of a default. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987). A court may enter a default judgment only if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for entry of a default judgment. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. In short, despite occasional statements to the contrary, a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover").

The United States Supreme Court has noted the difference between well-pleaded facts and conclusory allegations. In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations, but it demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. at 678 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the plaintiff is entitled to relief.'" *Id.* at 679 (quoting Fed.R.Civ.P. 8(a)(2)). This

analysis is equally applicable to a motion for default judgment.  *See De Lotta v. Dezenzo's Italian Restaurant, Inc.*, No. 6:08-cv-2033-Orl-22KRS, 2009 WL 4349806, *5 (M.D. Fla. November 24, 2009).

Once liability is established, the Court turns to the terms of the judgment.  Pursuant to Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  If unspecified monetary damages are sought, the party moving for default judgment has the burden to prove the unliquidated sums in a hearing on damages or otherwise. Fed.R.Civ.P. 55(b)(1)-(2).  Pursuant to Rule 55(b)(2), the Court "may conduct hearings or make referrals-preserving any federal statutory right to a jury trial-when, to enter or effectuate judgment, it needs to: A) conduct an accounting; B) determine the amount of damages; C) establish the truth of any allegation by evidence; or D) investigate any other matter." Thus, in order to enter a default judgment, the Court must find that an adequate showing has been made as to liability and the kind or amount of damages or other relief.

**II. Allegations of the Complaint**

In pertinent part, the Complaint alleges that Plaintiff is the owner of 1) U.S. Trademark Registration No. 1,923,448 for SOUND CHOICE [Doc. 1, ¶ 41]; 2) U.S. Trademark Registration No. 2,000,725 for a display trademark SOUND CHOICE and Design® [¶ 42]; 3) U.S. Service Mark Registration No. 4,099,045 for the trademark SOUND CHOICE [¶ 43]; and 4) U.S. Service Mark Registration No. 4,099,052 for the trademark SOUND CHOICE [¶ 44] (collectively "the Marks").

The alleged trademark violations are predicated solely on alleged activities of dismissed Defendant Diane M. Calo.   According to the Complaint:

> 54. Calo provides karaoke services to various venues in Florida, including St. Matthews Tavern at Orlando Beer Garden in Orlando, Florida, operated by Defendant Orlando Beer Garden.
> 55. *On information and belief*, in order to provide services, rather than using original karaoke discs that she possesses (if she indeed possesses such discs), Calo

relies upon one or more computer hard drives that stores files representing karaoke accompaniment tracks.

56. *On information and believe* [sic], Calo relies upon at least one such computer hard drive described in paragraph 55 herein.

57. *On information and belief*, Calo created, or directed another to create, or otherwise acquired from a third party the files that are stored on Calo's computer hard drive(s).

58. Calo did not pay any royalties or fees to PEP for the privilege of displaying the Sound Choice Marks during karaoke shows.

59. *On information and belief,* Calo does not maintain a 1:1 correspondence relationship between her hard drives and original discs she has lawfully acquired, if she indeed has any original discs.

60. PEP did not authorize, cause, control, or know about the creation of the files stored on the Calo's computer hard drives at the time those files were so stored.

61. Rather, *on information and belief,* the files were created by or at the behest of Calo, or by a third party unknown to PEP. The party who created the files is the "origin" of the files for purposes of the Trademark Act.

62. *On information and belief*, many of the files stored on Calo's computer hard drive are representative of karaoke tracks originally created by PEP and its predecessor and are marked with the Sound Choice Marks.

63. When played as intended using appropriate software, those files cause the Sound Choice Marks and the Trade Dress to be displayed as part of the associated video component of the karaoke tracks they represent.

64. PEP did not authorize Calo to create or use karaoke accompaniment tracks or computer files representative of karaoke accompaniment tracks that bear the Sound Choice Marks or the Trade Dress.

65. As such, the placement of the Sound Choice Marks and the Trade Dress upon Calo's self-created computer files is a false designation of the origin of those computer files.

66. At all times relevant to the causes of action stated herein, Calo has known that the creation and use of karaoke accompaniment tracks or computer files representative of karaoke accompaniment tracks that bear the Sound Choice Marks and/or the Trade Dress is not authorized.

67. Cato's files, which function as karaoke accompaniment tracks, are also counterfeits of genuine Sound Choice-branded tracks.

68. A patron or unwitting customer of the Orlando Beer Garden, when confronted with the display of the Sound Choice Marks and the Trade Dress at one of Calo's shows, is likely to be confused into believing, falsely, that PEP created the tracks in use or authorized their creation.

69. *On information and belief,* Calo's activities are not isolated or sporadic occurrences, but are instead activities which have been undertaken regularly for several years.

70. Calo's use of the computer files representative of karaoke accompaniment tracks is commercial in nature because she is paid to provide access to and play those computer files and tracks at karaoke shows.

71. Additionally, even if a particular counterfeit track is not played at a given show, the act of making that track available for play at a show are commercial acts for which Calo is compensated and which inure to her benefit.

> 72. *On information and belief*, Calo's piracy of accompaniment tracks is not limited to PEP's tracks, but extends to the piracy of numerous other manufacturers' tracks as well, on the same terms as above.
> 73. PEP's marks were displayed on video monitors during various songs played by Calo.
> 74. Calo's uses of PEP's marks were not authorized.

(Doc. 1, ¶¶ 54-74, emphasis added).

The actions of Orlando Beer Garden are alleged to be as follows:

> 75. Orlando Beer Garden hired Calo to provide commercial karaoke services at its bar.
> 76. Orlando Beer Garden has the right and ability to control whether its contractors use authentic or counterfeit materials to provide services.
> 77. PEP informed Orlando Beer Garden of the infringing and counterfeit character of Orlando Beer Garden's contractor's karaoke accompaniment tracks.
> 78. PEP offered Orlando Beer Garden the opportunity to enter into its Verified Compliance Safe Harbor Program, which is a free program that protected venues from liability for the acts of its contractors in exchange for requiring its contractors to provide information about their karaoke systems to enable PEP to assess whether those contracts are operating legally.
> 79. PEP also provides a certification program to karaoke operators as a means by which venues can determine, without significant injury, whether the karaoke operator they wish to hire is using authentic materials.
> 80. As a result of PEP's efforts, Orlando Beer Garden has actual knowledge of the infringing and counterfeit nature of Calo's karaoke materials.
> 81. Despite that knowledge, Orlando Beer Garden refused to terminate Calo's services.
> 82. Despite that knowledge, Orlando Beer Garden continued to receive financial benefit from the provision of infringing karaoke services at its establishment by Calo, through the attraction of paying patrols [sic] to its establishment.
> 83. As such, Orlando Beer Garden operated in actual or apparent partnership with Calo, in a symbiotic relationship from which both benefit.
> 84. Orland [sic] Beer Garden has also advertised its karaoke services, which services include the unlawful use of the Sound Choice Marks.
> 85. Orlando Beer Garden is liable for the acts of trademark infringement directly engaged in by Calo on its respective premises or for its benefit.

(Doc. 1, ¶¶ 75-85).

Plaintiff alleges that "Calo's illicit activities" have damaged it "in an amount of at least $100,00.00" (Doc. 1, ¶¶ 86-92) and "[*o*]*n information and belief*," the acts of Calo and Orlando Beer Garden were "willful, knowing, and intentional" (¶¶ 98, 135-emphasis added).

**III. Analysis**

- 5 -

Plaintiff seeks "an award of statutory damages, seizure of the infringing articles, a permanent injunction, and inclusion of specific language to assist in judgment collection" arising from what it claims are violations of the Lanham Act, 15 U.S.C. § 1125(a), and Fla. Stat. § 501.211. The Lanham Act prohibits the use of a registered trademark in connection with "the sale, offering for sale, distribution, or advertising of any goods or services." 15 U.S.C. § 1114(1)(a). Plaintiff contends that the allegations admitted by the default establish not only trademark infringement but also federal unfair competition, citing *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 981 (11th Cir. 1983) (the same facts which support an action for trademark infringement would also support an action for unfair competition). Moreover, Plaintiff contends that these acts also are unfair and deceptive trade practices under state law, citing *TracFone Wireless, Inc. v. Access Telecom, Inc.*, 642 F. Supp. 2d 1354, 1365 (S.D. Fla. 2009) ("Engaging in trademark infringement is an unfair and deceptive trade practice that violates [FDUTPA]"). As a basis for these conclusions, Plaintiff relies on the allegations of the Complaint and the Declaration of its President. The Court finds neither the existence of the default nor the averments in the Declaration can support entry of a default judgment here.

As noted, there are no allegations in the Complaint that can support a finding that Defendant directly infringed the Marks. Rather, the Complaint is directed to the actions of Calo, and Calo is not a party to these proceedings, having been dismissed, with prejudice. Nonetheless, Plaintiff contends that Orlando Beer is vicariously liable for her actions in that vicarious liability for trademark infringement "requires a finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product." *RGS Labs Intern., Inc. v. The Sherwin-Williams Co.*, 2010 U.S. Dis. LEXIS 8339, at \*3 (S.D. Fla. Jan. 11, 2010) (*citing Hard Rock Café Licensing Corp. v. Concession Serv., Inc.*, 955 F.2d 1143, 1150 (7th Cir. 1992)). Assuming that

Plaintiff has correctly stated the law with respect to vicarious liability,[2] the existing showing is insufficient, as a matter of law.

Plaintiff argues that the "admitted allegations" of the Complaint "conclusively establish Orlando Beer's liability for trademark infringement and unfair competition." While Defendants are held to admit the 'well pled' allegations, the allegations pertaining to liability made in the instant Complaint consist of conclusory or speculative assertions, and are insufficient to support a default judgment. Although Plaintiff alleges a theory which could support a finding of infringement as to Calo, if particular facts were supplied, all of Calo's "illicit" actions which form the basis of Plaintiff's claim are alleged only on "information and belief," and neither the Complaint nor the supporting materials set forth a factual basis for that belief.[3] *See, e.g.,* Doc. 1, ¶¶ 55-57, 59, 61-62, 69, 72. While there is nothing wrong with alleging factual averments conditionally, *see* Rule 11(b)(3), Fed. R. Civ. P. (2015), a default does not transform such conditional statements of belief into established facts. "Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard." *In re Superior Air Parts, Inc.,* 486 B.R. 728, 741 (Bankr. N.D. Tex. 2012) *aff'd sub nom. Lycoming Engines v. Superior Air Parts, Inc.*, 3:13-CV-1162-L, 2014 WL 1976757 (N.D. Tex. 2014) (internal citations omitted).[4]  Thus, there are no

---

[2] It is not clear to the Court whether Plaintiff is, in fact, attempting to assert contributory liability.  *See, e.g., Mini Maid Servs. Co. v. Maid Brigade Sys., Inc.,* 967 F.2d 1516, 1522 (11th Cir.1992) ("With respect to a franchisor's liability for the independent infringing acts of its franchisees, we hold that the franchisor may be held accountable only if it intentionally induced its franchisees to infringe another's trademark or if it knowingly participated in a scheme of trademark infringement carried out by its franchisees.")*; Bauer Lamp Co. v. Shaffer,* 941 F.2d 1165, 1171 (11th Cir.1991) ("A person who knowingly participates in furthering the trade dress infringement is liable as a contributing party.").

[3] Indeed, there are no averments which affirmatively state when any such infringement occurred.

[4]  Note that this is also true in the summary judgment context.   As the Eleventh Circuit has observed:

> The Rules are clear: "Supporting and opposing affidavits shall be made on personal knowledge." Fed.R.Civ.P. 56(e) (emphasis added). Rule 56(e)'s personal knowledge requirement prevents statements in affidavits that are based, in part, "upon information and belief"—instead of only knowledge—from raising genuine issues of fact sufficient to defeat summary judgment. *See Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 851 (11th Cir.2000) ( "upon information and belief" insufficient); *Fowler v. Southern Bell Tel. and Tel. Co.*, 343 F.2d 150, 154 (5th Cir.1965) ("knowledge, information and belief" insufficient); *Robbins v. Gould,* 278 F.2d 116, 118 (5th Cir.1960) ( "knowledge and belief" insufficient). Likewise, an affidavit stating only that the affiant "believes" a certain fact exists is insufficient to defeat summary judgment by creating a

credible *factual* assertions pled sufficient to establish that Calo infringed the Marks. Absent a showing as to her liability, a finding of vicarious liability cannot be made.

Moreover, the conclusions advanced in the motion are contradicted by other filings. For example, as a basis for its conclusion that Orlando Beer knew of the purported infringement, Plaintiff contends that "Orlando Beer was notified by Phoenix of the ongoing infringement in its establishment prior to the commencement of this action, but nevertheless continued to contract with Calo to perform karaoke shows" (Doc. 13, p. 5).   As support for this assertion, Kurt Slep, President of Plaintiff, states in his Declaration:

> On October 28, 2015, PEP sent two (2) separate letters to Orlando Beer, each of which was delivered as intended.  The letters *notified Orlando Beer of the infringing and counterfeit character of its contractor Diane M. Calo's* ("Calo") karaoke accompaniment tracks, Orlando Beer's potential liability for vicarious infringement and afforded Orlando Beer an opportunity to participate in PEP's Verified Compliance Safe Harbor Program.  However, Orlando Beer never responded to this correspondence.

(Doc. 13-1, ¶12).

The referenced letters, however, are attached to the Complaint (Doc. 1-1, pp. 1-4) and do not comport with this description.  In fact, the letters are *not* 'cease and desist' in nature, and fail to mention Calo *at all.*   This is not surprising as Slep also avers that "PEP initially investigated Calo's karaoke activities on November 15, 2015" (Doc. 13-1, ¶13) – 18 days *after* the letters were sent.[5]

---

genuine issue of fact about the existence of that certain fact. *Jameson v. Jameson*, 176 F.2d 58, 60 (D.C.Cir.1949) ("Belief, no matter how sincere, is not equivalent to knowledge."); *see also Tavery v. United States*, 32 F.3d 1423, 1426 n. 4 (10th Cir.1994); *Hansen v. Prentice–Hall, Inc.*, 788 F.2d 892, 894 (2d Cir.1986). Even if the affidavit is otherwise based upon personal knowledge (that is, includes a blanket statement within the first few paragraphs to the effect that the affiant has "personal knowledge of the facts set forth in th[e] affidavit"), a statement that the affiant believes something is not in accordance with the Rule. *See Certmetek, Inc. v. Butler Avpak, Inc.*, 573 F.2d 1370, 1377 (9th Cir.1978) (equating "I understand" statement in affidavit to inadmissible "I believe" statements and concluding that statement is inadmissible despite general averment to personal knowledge at beginning of affidavit).

*Pace v. Capobianco*, 283 F.3d 1275, 1278–79 (11th Cir.2002) (footnote omitted).

[5] Although Slep declares that "Calo was observed performing multiple Sound Choice branded songs bearing the Marks on the display monitor at Orlando Beer," there is no showing that this declaration is based on his *personal* knowledge.   Moreover, even if this assertion were credited, there is no basis to conclude that the use of the songs was based on illegal infringement, as opposed to the allowed use of a CD or the media-shifting policy. Allegations to support a self-created computer file infringement are based solely on unspecified "information and belief." *See* Doc. 1, Allegations 55-57, 59.

On this record, there is no factual basis to support a finding of vicarious liability for the acts of Calo. As such, it is **respectfully recommended** that the motion be denied, without prejudice to prompt renewal, upon a full and appropriate evidentiary showing supporting the conclusions made and relief sought.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on March 30, 2016.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy