# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**PHOENIX ENTERTAINMENT PARTNERS, LLC,**

    **Plaintiff,**

**v.**                                             **Case No:   6:16-cv-80-Orl-31DAB**

**ORLANDO BEER GARDEN, INC.,**

    **Defendant.**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration with evidentiary hearing on the following motion filed herein:

> **MOTION:**  Motion for Default Judgment (Doc. No. 24)
>
> **FILED:**   June 2, 2016
>
> ---
>
> **THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

### I.  Background

The case presents with pertinent history. On January 19, 2016, Plaintiff filed a Complaint against Defendant Orlando Beer Garden, Inc. ("Beer Garden") and Diane M. Calo ("Calo"), alleging trademark infringement, common law unfair competition, and violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla.Stat. §501.211 (Doc. 1). The Complaint alleged that Plaintiff is the owner of certain trademarks and purported to plead injury predicated solely on alleged activities of Calo. The Complaint alleged, in pertinent part:

> 54. Calo provides karaoke services to various venues in Florida, including St. Matthews Tavern at Orlando Beer Garden in Orlando, Florida, operated by Defendant Orlando Beer Garden.

55. *On information and belief*, in order to provide services, rather than using original karaoke discs that she possesses (if she indeed possesses such discs), Calo relies upon one or more computer hard drives that stores files representing karaoke accompaniment tracks.

56. *On information and believe* [sic], Calo relies upon at least one such computer hard drive described in paragraph 55 herein.

57. *On information and belief,* Calo created, or directed another to create, or otherwise acquired from a third party the files that are stored on Calo's computer hard drive(s).

58. Calo did not pay any royalties or fees to PEP for the privilege of displaying the Sound Choice Marks during karaoke shows.

59. *On information and belief,* Calo does not maintain a 1:1 correspondence relationship between her hard drives and original discs she has lawfully acquired, if she indeed has any original discs.

60. PEP did not authorize, cause, control, or know about the creation of the files stored on the Calo's computer hard drives at the time those files were so stored.

61. Rather, *on information and belief,* the files were created by or at the behest of Calo, or by a third party unknown to PEP. The party who created the files is the "origin" of the files for purposes of the Trademark Act.

62. *On information and belief,* many of the files stored on Calo's computer hard drive are representative of karaoke tracks originally created by PEP and its predecessor and are marked with the Sound Choice Marks.

63. When played as intended using appropriate software, those files cause the Sound Choice Marks and the Trade Dress to be displayed as part of the associated video component of the karaoke tracks they represent.

64. PEP did not authorize Calo to create or use karaoke accompaniment tracks or computer files representative of karaoke accompaniment tracks that bear the Sound Choice Marks or the Trade Dress.

65. As such, the placement of the Sound Choice Marks and the Trade Dress upon Calo's self-created computer files is a false designation of the origin of those computer files.

66. At all times relevant to the causes of action stated herein, Calo has known that the creation and use of karaoke accompaniment tracks or computer files representative of karaoke accompaniment tracks that bear the Sound Choice Marks and/or the Trade Dress is not authorized.

67. Cato's files, which function as karaoke accompaniment tracks, are also counterfeits of genuine Sound Choice-branded tracks.

68. A patron or unwitting customer of the Orlando Beer Garden, when confronted with the display of the Sound Choice Marks and the Trade Dress at one of Calo's shows, is likely to be confused into believing, falsely, that PEP created the tracks in use or authorized their creation.

69. *On information and belief,* Calo's activities are not isolated or sporadic occurrences, but are instead activities which have been undertaken regularly for several years.

70. Calo's use of the computer files representative of karaoke accompaniment tracks is commercial in nature because she is paid to provide access to and play those computer files and tracks at karaoke shows.

71. Additionally, even if a particular counterfeit track is not played at a given show, the act of making that track available for play at a show are commercial

>acts for which Calo is compensated and which inure to her benefit.
>72. *On information and belief,* Calo's piracy of accompaniment tracks is not limited to PEP's tracks, but extends to the piracy of numerous other manufacturers' tracks as well, on the same terms as above.
>73. PEP's marks were displayed on video monitors during various songs played by Calo.
>74. Calo's uses of PEP's marks were not authorized.

(Doc. 1, ¶¶ 54-74, emphasis added).

The actions of Orlando Beer Garden were alleged to be as follows:

>75. Orlando Beer Garden hired Calo to provide commercial karaoke services at its bar.
>76. Orlando Beer Garden has the right and ability to control whether its contractors use authentic or counterfeit materials to provide services.
>77. PEP informed Orlando Beer Garden of the infringing and counterfeit character of Orlando Beer Garden's contractor's karaoke accompaniment tracks.
>78. PEP offered Orlando Beer Garden the opportunity to enter into its Verified Compliance Safe Harbor Program, which is a free program that protected venues from liability for the acts of its contractors in exchange for requiring its contractors to provide information about their karaoke systems to enable PEP to assess whether those contracts are operating legally.
>79. PEP also provides a certification program to karaoke operators as a means by which venues can determine, without significant injury, whether the karaoke operator they wish to hire is using authentic materials.
>80. As a result of PEP's efforts, Orlando Beer Garden has actual knowledge of the infringing and counterfeit nature of Calo's karaoke materials.
>81. Despite that knowledge, Orlando Beer Garden refused to terminate Calo's services.
>82. Despite that knowledge, Orlando Beer Garden continued to receive financial benefit from the provision of infringing karaoke services at its establishment by Calo, through the attraction of paying patrols [sic] to its establishment.
>83. As such, Orlando Beer Garden operated in actual or apparent partnership with Calo, in a symbiotic relationship from which both benefit.
>84. Orland [sic] Beer Garden has also advertised its karaoke services, which services include the unlawful use of the Sound Choice Marks.
>85. Orlando Beer Garden is liable for the acts of trademark infringement directly engaged in by Calo on its respective premises or for its benefit.

(Doc. 1, ¶¶ 75-85).

Plaintiff alleged that "Calo's illicit activities" have damaged it "in an amount of at least $100,000.00" (Doc. 1, ¶¶ 86-92) and "*[o]n information and belief,*" the acts of Calo and Orlando Beer Garden were "willful, knowing, and intentional" (¶¶ 98, 135-emphasis added).

Following service, neither Defendant filed an Answer or otherwise appeared. On Plaintiff's motion, the Clerk entered a default against Beer Garden on February 19, 2016 (Docs. 11, 12). On

March 8, 2016, Plaintiff moved for entry of default judgment of damages and entry of a permanent injunction against Beer Garden (Doc. 13). On March 9, 2016, Plaintiff filed a Notice of Voluntary Dismissal with prejudice, as to Calo (Doc. 14). The District Judge ordered Plaintiff's claims against Calo dismissed with prejudice, each party to bear its own fees and costs (Doc. 15).

On March 30, 2016, the undersigned issued a Report and Recommendation that the motion for entry of default judgment against Beer Garden be denied, without prejudice (Doc. 16). As detailed in the Report, there was no basis for a finding of direct infringement by Beer Garden and the showing of vicarious liability, based largely on unsupported allegations of unspecified "information and belief," was insufficient as a matter of law. *Id.* The undersigned further found some of the assertions made by Plaintiff to be contradicted by the exhibits tendered in support of the motion. *Id.* It was therefore recommended that the motion be denied, "without prejudice to prompt renewal, upon a full and appropriate evidentiary showing supporting the conclusions made and relief sought." *Id.* No objections were filed and the District Judge adopted the Report (Doc. 18).

On April 13, 2016, Plaintiff filed an Amended Complaint solely against Beer Garden (Doc. 17). In this pleading, Plaintiff reiterates that it is the owner of certain marks, and re-asserts its allegations, without the "upon information and belief" preface. Plaintiff alleges, in pertinent part:

> 55. Diane M. Calo ("Calo") provided karaoke services to various venues in Florida, including St. Matthews Tavern at Orlando Beer Garden in Orlando, Florida, operated by Defendant Orlando Beer Garden.
> 56. At the times complained of herein, Calo relied upon one or more computer hard drives that stored files representing Sound Choice-branded karaoke accompaniment tracks.
> 57. At the times complained of herein, Calo did not own original Sound Choice discs corresponding to the Sound Choice-branded karaoke accompaniment tracks stored on her hard drive or drives and did not have permission from PEP to make, possess, or make commercial use of the Sound Choice-branded karaoke accompaniment tracks.
> 58. At the times complained of herein, Calo played unauthorized karaoke tracks at Orlando Beer Garden.
> 59. At the times complained of herein, Calo was engaged in a scheme of infringement of the Sound Choice Marks and the Trade Dress.
> 60. At all times at which Calo provided services in Orlando Beer Garden, Defendant had the ability to control Calo's karaoke activities.

61. When Calo provided karaoke services in Orlando Beer Garden, Defendant derived an economic benefit from Calo's karaoke activities.

62. When Calo provided karaoke services in Orlando Beer Garden, Defendant compensated Calo for those services.

63. At the times complained of herein, when played as intended using appropriate software, the karaoke tracks performed at Orlando Beer Garden caused the Sound Choice Marks and the Trade Dress to be displayed as part of the associated video component of the karaoke tracks they represent.

64. PEP did not authorize the karaoke performances performed at Orlando Beer Garden or the display of the Sound Choice Marks and the Trade Dress in connection with Calo's provision of karaoke entertainment services at Orlando Beer Garden.

65. As such, the placement of the Sound Choice Marks and the Trade Dress upon the karaoke tracks performed at Orlando Beer Garden and the display of the Sound Choice Marks and the Trade Dress while Calo was providing karaoke entertainment services at Orlando Beer Garden is a false designation of the origin of those computer files, and of those services.

66. The karaoke tracks stored on Calo's hard drive and used to provide karaoke entertainment services at Orlando Beer Garden are counterfeits of genuine Sound Choice-branded tracks.

67. A patron or unwitting customer of the Orlando Beer Garden, when confronted with the display of the Sound Choice Marks and the Trade Dress, is likely to be confused into believing, falsely, that PEP created the tracks in use or authorized their creation, or that PEP authorized or stood behind the services Calo and the Defendant were providing.

68. Additionally, even if a particular counterfeit track is not played at a given show, the act of making that counterfeit track available for play at a show is a commercial act from which Defendant derived an economic advantage.

ACTIVITIES OF DEFENDANT ORLANDO BEER GARDEN

69. Defendant partnered with Calo to provide commercial karaoke services at its bar.

70. Defendant has the right and ability to control whether the specific persons providing services at its establishment use authentic or counterfeit materials to provide services.

71. PEP has provided notice to Defendant of PEP's rights. This notice came inter alia by way of the letters in Exhibit "A", and by service of the Original Complaint in this action. Defendant has provided no response to any communication from PEP and failed to respond to the Original Complaint.

72. PEP offered Defendant the opportunity to enter into its Verified Compliance Safe Harbor Program, which is a free program that protected venues from liability for the acts of its contractors in exchange for requiring its contractors to provide information about their karaoke systems to enable PEP to assess whether those contracts are operating legally.

73. PEP also provides a certification program to karaoke operators as a means by which venues can determine, without significant inquiry, whether the karaoke operator they wish to hire is using authentic materials.

74. As a result of PEP's efforts, Defendant had actual knowledge of the infringing

>and counterfeit nature of the karaoke materials in use at its establishment.
>
>75. In the alternative, as a result of PEP's efforts to make Defendant aware of its participation in trademark infringement, Defendant was willfully blind to the infringing activities occurring in its establishment and took no action to ascertain whether any infringement was occurring or to stop that infringement.
>
>76. Despite that knowledge, whether actual or constructive, Defendant continued to participate in a scheme of infringement and continued to receive the financial benefit of attracting food-and beverage-purchasing patrons to its establishment based on the availability of the infringing karaoke entertainment services Calo provided there.
>
>77. Defendant operated in actual or apparent partnership with Calo, in a symbiotic relationship from which both benefited.
>
>78. In particular, Defendant advertised Calo's karaoke services as Defendant's own services, which services included the unlawful use of the Sound Choice Marks.
>
>79. Defendant is secondarily liable for the acts of trademark infringement directly engaged in by its agents, including Calo, on its respective premises or for its benefit.
>
>80. Defendant's gain from permitting unauthorized karaoke in Orlando Beer Garden has damaged PEP.
>
>81. By using non-authorized karaoke services, Defendant and its agents have unfairly competed with PEP's legitimate customers.
>
>82. By refusing to require authorized karaoke performances, Defendant has deprived PEP of revenue by discouraging legitimate operators from investing in legitimate Sound Choice branded products.
>
>83. By exerting illegitimate and unfair pressure upon the market for karaoke services in this State and judicial district through the use of pirated material belonging to PEP, Defendant has cost PEP in excess of $100,000.00 in revenue from legitimate sources crowded out of the market.

(Doc. 17).   Notably, despite repeated references to "all times complained of herein," the Amended Complaint does not identify the specific dates at issue. Instead, Plaintiff avers:

>39. Prior to instituting this lawsuit, PEP sent two letters to Orlando Beer Garden via UPS *on October 28, 2015*. To date, Defendant has not provided a response. Attached as Exhibit "A" are a copy of PEP's letters to Defendant.
>
>40. On or about *November 15, 2015*, PEP conducted an in-person investigation of the karaoke services provided at Orlando Beer Garden.
>
>41. Approximately 80% of the karaoke tracks played *during the investigation* were unauthorized duplicates of Sound Choice-branded karaoke tracks.

(Doc. 17, emphasis added).

Following service of this pleading, no answer or responsive paper was filed and a default was entered (Docs. 21-23). The instant motion followed.

The Court held an evidentiary hearing on the motion (Docs. 26-28, 33), and gave Plaintiff

- 6 -

leave to file additional briefing. Plaintiff has done so (Doc. 35) and the matter is now ripe for review. Upon consideration of the evidence, the record, and the applicable law, it is respectfully recommended that the motion be **denied,** and the case dismissed.

### II.  Legal Standard

A district court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear pursuant to Federal Rule of Civil Procedure 55(b)(2). In defaulting, a defendant "admit[s] the plaintiff's well-pleaded allegations of fact" for purposes of liability. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir.1987).  Nonetheless, a court may enter a default judgment only if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for entry of a default judgment. *Nishimatsu Constr. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. In short, despite occasional statements to the contrary, a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover").

The United States Supreme Court has noted the difference between well-pleaded facts and conclusory allegations. In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations, but it demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. at 678 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the plaintiff is entitled to relief.'" *Id*. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). This analysis is equally applicable to a motion for default judgment. *See De Lotta v. Dezenzo's Italian Restaurant, Inc.*, No. 6:08-cv-2033-Orl-22KRS, 2009 WL 4349806, *5 (M.D. Fla. November 24,

2009).

Once liability is established, the Court turns to the terms of the judgment. Pursuant to Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." If unspecified monetary damages are sought, the party moving for default judgment has the burden to prove the unliquidated sums in a hearing on damages or otherwise. Fed.R.Civ.P. 55(b)(1)-(2). Pursuant to Rule 55(b)(2), the Court "may conduct hearings or make referrals-preserving any federal statutory right to a jury trial-when, to enter or effectuate judgment, it needs to: A) conduct an accounting; B) determine the amount of damages; C) establish the truth of any allegation by evidence; or D) investigate any other matter." Thus, in order to enter a default judgment, the Court must find that an adequate showing has been made as to liability and the kind or amount of damages or other relief.

### III. Discussion

Plaintiff contends that it is entitled to statutory damages in the amount of $100,000.00 and a permanent injunction against Beer Garden, based on the allegations deemed admitted and the proof of trademark infringement involving counterfeiting and unfair competition under the Trademark Act of 1946, as amended, common law unfair competition, and violations of FDUTPA.  Plaintiff relies on the evidence offered at hearing (the testimony of its President and the testimony of its investigator), and the Declaration of its President, Kurt Slep (Doc. 24-1).  Plaintiff contends that the admitted allegations in the Amended Complaint and the evidence submitted "conclusively establish Orlando Beer's liability for trademark infringement and unfair competition."

The Court starts with the nature of the rights allegedly at issue here. The Lanham Act ("the Act") expressly prohibits the unauthorized use of a registered trademark in connection with "the sale, offering for sale, distribution, or advertising of any goods or services." 15 U.S.C. § 1114(1)(a). There is no evidence that Beer Garden used any of the marks in connection with the sale, distribution or advertising of any goods or services. Indeed, there is no claim against Beer Garden for direct

- 8 -

infringement of any mark. Rather, Plaintiff alleges that Beer Garden is vicariously liable for the acts of Calo "because of its knowledge of, control of, and benefit from" Calo's direct infringement. (Doc. 24, p. 6). The Court sees no basis for such a conclusion.

As characterized in the operative complaint and as elaborated upon at hearing, Calo is alleged to have used digitized copies of Plaintiff's karaoke discs or of the karaoke tracks contained therein. Citing Allegation 37, Plaintiff argues that "Neither Orlando Beer nor Calo had a license to use counterfeit tracks in connection with their provision [of] karaoke services." (Doc. 24 at 5). As admitted at hearing and in supplemental briefing, however, Plaintiff is not pursuing a copyright claim to the recordings themselves, but a trademark claim with respect to the "Sound Choice" logo. There is no evidence offered that Calo used *the logo* to sell or offer for sale the karaoke tracks, or to advertise her own services. *See, e.g.,* Hearing Exhibit 17 (advertisement of Karaoke event). At best, the allegations and proof at hearing establish that on *one* occasion, on a November 15, 2015 visit, from 8:50 PM to 10:30 PM, Calo played 14 songs where the Sound Choice logo was displayed without the permission of Plaintiff (testimony of Brian Plieler).[1] Although the undersigned is skeptical and the proof here is very thin, it is acknowledged for present purposes that the display of the logo during a karaoke performance has been found to be enough to establish that the marks were used in connection with goods or services in commerce sufficient to state a Lanham Act claim. *See, e.g., Phoenix Entertainment Partners, LLC v. Lapadat*, 123 F. Supp. 3d 1114 (D. Minn. 2015) (relying on 15 U.S.C. §1127); *Slep-Tone Entertainment Corp. v. Sellis Enterprises, Inc.*, Case No. 1:13-CV-0807(N.D. Ill. Apr. 3, 2015) (Doc. 35-9).[2] However, even assuming that the process of media shifting from a genuine licensed good to a digital hard drive constitutes an unauthorized copy

---

[1] Importantly, the testimony established that Calo has since been brought into compliance with Plaintiff's "policy" and is now authorized by Plaintiff to use the marks. As Beer Garden's liability is alleged to be solely due to the acts of Calo, and Calo is no longer infringing (assuming she was), there is no factual basis for any injunctive relief.

[2] The other cases Plaintiff refers to in its supplemental briefing (Docs. 35-1 through 35-8) do not purport to provide any in-depth analysis of the issues here, and are therefore unpersuasive.

of the logo and Calo's display of the logo violated the Act, Plaintiff has failed to establish any basis for finding Beer Garden liable for that wrongdoing.

Plaintiff alleges that Beer Garden is liable for Calo's infringement under a theory of vicarious liability. According to Plaintiff:

> Vicarious liability for trademark infringement "requires a finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product." *RGS Labs Intern., Inc. v. The Sherwin-Williams Co.*, 2010 U.S. Dis. LEXIS 8339, at *3 (S.D. Fla. Jan. 11, 2010) (citing *Hard Rock Café Licensing Corp. v. Concession Serv., Inc.*, 955 F.2d 1143, 1150 (7th Cir. 1992)).

(Doc. 24, p. 6). Plaintiff claims that all of these elements are established by the default because it alleged that Beer Garden "had the ability to exercise control over the use of infringing products, that it had knowledge that infringing products were being used to provide services, and that it derived a direct financial benefit from the use of the infringing products." The Court finds that Plaintiff has not established that Calo and Beer Garden are in "an apparent or actual partnership, have authority to bind one another in transactions with third parties, or exercise joint ownership or control over the infringing product."

Plaintiff presented no testimony or evidence regarding the relationship between Calo and Beer Garden, but relies solely on the allegations of the Amended Complaint. As set forth in the standards of law above, however, a defendant is not held to admit facts that are not well-pled or to admit conclusions of law. *Nishimatsu, supra.* The pertinent allegations relied upon by Plaintiff all purport to allege generalized legal conclusions of agency or partnership, without any supporting facts. Indeed, the allegations are not only conclusory, they are contradictory.

Calo is first cast as a vendor who "provided karaoke services to various venues" (Allegation 55) and was "compensated for those services" when she provided them to Beer Garden (Allegation 62). These allegations are consistent with a finding that Calo is an independent contractor. *See* reference to Beer Garden's "contractors" (Allegation 72). Despite these allegations, she is later

- 10 -

alleged to be a "partner" of Beer Garden (Allegations 69, 77); and then its "agent" (Allegation 79). Importantly, Plaintiff does not allege nor tender evidence of any contract, other writing, or testimony purporting to show the existence and terms of this alleged partnership or agency. As interpretation of agreements for partnership or agency are legal issues,[3] the conclusory allegations as to the existence of a partnership or agency relationship are not deemed admitted. *See, e.g., Perez v. Wells Fargo N.A.,* 774 F.3d 1329, 1340 (11th Cir. 2014) ("whether Wells Fargo's actions were authorized by the contract was a legal assertion couched as a factual allegation, and it should not have been deemed admitted" upon default, as construction of a contract is a question of law under state law).

A review of the pertinent state law on matters of partnership and agency underscores the point. As the Southern District has summarized:

> Under Florida law, "the association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership." Fla. Stat. § 620.8202(1). **"A partnership is created only where both parties contribute to the labor or capital of the enterprise, have a mutuality of interest in both profits and losses, and agree to share in the assets and liabilities of the business."** *Williams v. Obstfeld*, 314 F.3d 1270, 1275 (11th Cir. 2002) (quoting *Dreyfuss v. Dreyfuss*, 701 So.2d 437, 439 (Fla.Dist.Ct.App.1997) (internal quotation marks omitted)).
>
> A joint venture is a form of partnership under Florida law. *Williams,* 314 F.3d at 1275. "**The essential elements of a joint venture are: (1) a community of interest in the performance of a common purpose, (2) joint control or right of control, (3) a joint proprietary interest in the subject matter, (4) a right to share in the profits and (5) a duty to share in any losses which may be sustained."** *Chase Manhattan Mortg. Corp. v. Scott, Royce, Harris, Bryan, Barra & Jorgensen, P.A.*, 694 So.2d 827, 831 (Fla.Dist.Ct.App.1997) (citing *Kislak v. Kreedian*, 95 So.2d 510, 515 (Fla.1957)). A joint venture must arise out of a contract, either express or implied. *Vannamei Corp. v. Elite Int'l Telecomms., Inc.*, 881 So.2d 561, 562 (Fla.Dist.Ct.App.2004). "Such a contract is an indispensable prerequisite to the venture's existence." *Id*. (quoting *Kislak*, 95 So.2d at 515). T**he party which alleges the existence of a joint venture, bears "the burden of both alleging and proving that an agreement or contract supports the relationship.**..." *Id*. (quoting Kislak, 95 So.2d at 515). "[W]here ... the events and transactions which form the basis of the alleged relationship are not in writing,

---

[3] Contract interpretation is generally a question of law. *Lawyers Title Ins. Corp. v. JDC (Am.) Corp.*, 52 F.3d 1575, 1580 (11th Cir.1995): *see also Detroit Diesel Corp. v. Atl. Mut. Ins. Co.*, 18 So.3d 618, 620 (Fla. 4th DCA 2009) (applying Florida law -- the determination of whether a contract is unambiguous and the interpretation of an unambiguous contract are questions of law).

> the burden of establishing the existence of such contract, including all of its essential elements, is indeed, as it should be, a heavy and difficult one." *Id.* (quoting *Kislak*, 95 So.2d at 515). "Florida courts have interpreted these requirements to preclude a finding that a partnership or joint venture exists where any factor is missing." *Williams,* 314 F.3d at 1276 (citing *Kislak*, 95 So.2d at 517; *Dreyfuss,* 701 So.2d at 439; *Austin v. Duval Cnty. Sch. Bd.*, 657 So.2d 945, 948 (Fla.Dist.Ct.App.1995)).

*Burger v. Hartley*, 896 F. Supp. 2d 1157, 1167–68 (S.D. Fla. 2012) (emphasis added). The allegations and evidence here do not come close to establishing that Calo and Beer Garden were partners, by joint venture or otherwise.[4]

As for the conclusory assertion that Calo was the agent of Beer Garden, Judge Hodges has noted that in order to establish an agency relationship under Florida law, a plaintiff "must prove that (1) the principal acknowledges that the agent will act for it; (2) the agent accepts the undertaking; and (3) the principal controls the actions of the agent." *Ins. Co. of N. Am. v. Am. Marine Holdings, Inc.,* No. 5:04-CV-86OC10GRJ, 2005 WL 3158049, at *6 (M.D. Fla. Nov. 28, 2005) (collecting cases). "A key element in establishing an agency relationship is that of control." *Chase Manhattan Mortg. Corp. v. Scott, Royce, Harris, Bryan, Barra & Jorgensen, P.A.,* 694 So.2d 827, 832 (Fla.4th DCA1997). Here, there is no factual predicate alleged or introduced in evidence to support a finding that Beer Garden acknowledged Calo as its agent, or that Beer Garden controlled Calo.[5] This Court has observed that "when a party bearing the burden of proving agency fails to produce evidence in support of its allegations or where the evidence presented is so unequivocal that reasonable persons

---

[4] At a minimum, there is no proof of any joint control over Calo's karaoke hard drive or how she performed her services, and no showing of any sharing of profits or losses.

[5] Nor can this record support a finding of apparent authority. Under Florida law, apparent authority exists when the principal creates the appearance of an agency relationship. *Whetstone Candy Co. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1078 (11th Cir. 2003), citing *Ja Dan, Inc. v. L–J Inc.*, 898 F.Supp. 894, 900 (S.D.Fla.1995). Here, Plaintiff makes no factual showing that Beer Garden did anything to create such an appearance, other than engaging Calo to provide karaoke services. Absent more, the mere hiring of a vendor to perform a service does not transform that vendor into an agent for all purposes. Plaintiff cites no cases to the contrary.

could reach but one conclusion, a court may determine the lack of agency as a matter of law." *Pardo v. Tanning Research Labs., Inc.*, 996 F. Supp. 1222, 1225 (M.D.Fla.1998).

Absent a showing that Calo was Beer Garden's partner or agent, or that they exercised joint ownership or control over the infringing product (the karaoke display of the mark), Plaintiff's motion is due to be denied to the extent it seeks a judgment based on vicarious liability.[6]

Plaintiff fares no better on its claim that Beer Garden is liable as a contributory infringer. The Supreme Court has determined that liability for trademark infringement can extend "beyond those who actually mislabel goods with the mark of another." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 853, 102 S.Ct. 2182, 72 L.Ed 2d 606 (1982). Case law in this circuit "suggests that a contributory infringement claim requires, at a minimum, both an allegation of a direct infringement by a third party, and an allegation of an *intentional or knowing contribution to that infringement* by the defendant." *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1245–46 (11th Cir. 2007) (emphasis added); s*ee also Mini Maid Servs. Co. v. Maid Brigade Sys., Inc.*, 967 F.2d 1516, 1522 (11th Cir.1992) ("With respect to a franchisor's liability for the independent infringing acts of its franchisees, we hold that the franchisor may be held accountable only if it

---

[6] Alternatively, assuming that Beer Garden and Calo were "partners" or engaged in some joint endeavor, Plaintiff settled its suit against Calo, executed a mutual release, and dismissed its claim against her, with prejudice.  According to the release language quoted in the supplemental briefing, Plaintiff and Calo "hereby release and forever discharge each other, *including* their successors, assigns*, representatives,* attorneys, shareholders, directors, officers and employees from *any and all* matters, claims, complaints, charges, demands, restitution, actual damages . . . from the beginning of time to the date of the execution of this Agreement . . . ," including the claims arising out of the instant suit.   If, as alleged by Plaintiff, Calo and Beer Garden *were* partners or joint venturers, under Florida law, they were each other's representative with respect to the performance at Beer Garden, as "[i]nherent in contracts of this nature is the right and the authority of any one of the co-adventurers to bind the others with reference to the subject matter of the co-adventure." *Kislak v. Kreedian*, 95 So. 2d 510, 516 (Fla. 1957); *see also Pinnacle Port Community Ass'n. v. Orenstein*, 872 F.2d 1536, 1539 (11th Cir.1989) ("[i]n a joint venture, a form of partnership, one joint venturer can bind the others in matters within the scope of the joint enterprise"); *Marriott Int'l, Inc. v. Am. Bridge Bahamas, Ltd.*, 193 So. 3d 902, 906 (Fla. 3rd DCA 2015), reh'g denied (June 6, 2016) ("A contract of joint adventure is in effect one of mutual agency, each adventurer acting as a principal in his own behalf and as agent for his co-adventurer. Each one of several joint adventurers has the power to bind the others in matters that are strictly within the scope of the joint enterprise.") (internal citation omitted). As the release explicitly discharged all liability of Calo's representatives regarding the suit, and there is no language specifically excluding the claim against Beer Garden, it is arguable that any claim against Calo's "partner" was extinguished.

intentionally induced its franchisees to infringe another's trademark or if it knowingly participated in a scheme of trademark infringement carried out by its franchisees."); *Bauer Lamp Co. v. Shaffer*, 941 F.2d 1165, 1171 (11th Cir.1991) ("A person who knowingly participates in furthering the trade dress infringement is liable as a contributing party."). The key to a finding of liability here is a showing that Beer Garden *intentionally* participated or *knowingly* induced Calo to perform the infringing act; merely doing business with one who is committing infringing acts is not sufficient. *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.,* 797 F.3d 1248, 1279 (11th Cir. 2015) ("The mere sale of products in the course of an ordinary business relationship, without more, cannot justify a finding that a defendant induced, encouraged, caused, procured, or brought about false advertising. Contributory false advertising claims are cognizable under the Lanham Act, but a plaintiff must allege more than an ordinary business relationship between the defendant and the direct false advertiser in order to plausibly plead its claim."). Applied here, the Court finds no basis for imposing liability on Beer Garden for contributing to the alleged infringement.

As proof of the required knowledge of the infringement, Plaintiff points to the conclusory allegations regarding the partner/agency relationship between Calo and Beer Garden (discussed and repudiated above) and to Allegations 39-41 of the Amended Complaint, which allege:

> 39. Prior to instituting this lawsuit, PEP sent two letters to Orlando Beer Garden via UPS *on October 28, 2015*. To date, Defendant has not provided a response. Attached as Exhibit "A" are a copy of PEP's letters to Defendant.
> 40. On or about *November 15, 2015*, PEP conducted an in-person investigation of the karaoke services provided at Orlando Beer Garden.
> 41. Approximately 80% of the karaoke tracks played during the investigation were unauthorized duplicates of Sound Choice-branded karaoke tracks.

(Doc. 17, emphasis added). The letters referenced were also introduced at hearing (Hearing Exhibits 3 and 4). As the undersigned noted in its previous report, however, the letters are *not* 'cease and desist' in nature, do not identify any specific act of infringement committed on Beer Garden's premises and, indeed, do not mention Calo *at all.* As such, these letters could not have served to provide Beer Garden with knowledge of Calo's infringing activity.  Absent more, a generic letter

- 14 -

containing generalized assertions regarding trademark infringement in the karaoke context and an invitation to participate in the safe harbor program does not serve to establish that Beer Garden knew of *Calo's* infringement and knowingly participated in furthering same. *See Inwood,* 456 U.S. at 854 n. 13, 102 S.Ct. 2182 (contributory liability cannot be imposed merely for the defendant's failure to reasonably anticipate infringement by third parties (internal quotation marks omitted)); *Duty Free Americas, Inc.,* 797 F.3d at 1277 (in false advertising context, contributory liability means that the plaintiff must allege that the defendant "had the necessary state of mind—in other words that it 'intended to participate in' or 'actually knew about'" the infringement and "must also allege that the defendant actively and materially furthered the unlawful conduct—either by inducing it, causing it, or in some other way working to bring it about.").

Moreover, the allegations and evidence establish that, at the time the letters were written in October, *even Plaintiff* did not have knowledge of Calo's infringing activity at Beer Garden, as it did not conduct its investigation of her until November 15, 2015.   Indeed, even at the time of filing the initial Complaint in this action, Plaintiff apparently still lacked sufficient knowledge of Calo's activities to assert her infringements affirmatively; pleading Calo's actions only "on information and belief" (Doc. 1).

Plaintiff does allege that "as a result of PEP's efforts to make Defendant aware of its participation in trademark infringement, Defendant was willfully blind to the infringing activities occurring in its establishment and took no action to ascertain whether any infringement was occurring or to stop that infringement."   There is some support for the proposition that the knowledge element for purposes of the Lanham Act can be met by demonstrating that the operator was "willfully blind." *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1149 (7th Cir.1992) ("To be willfully blind, a person must suspect wrongdoing and deliberately fail to investigate."). The *Hard Rock* court, however, made it clear that there is no duty to investigate without a reason to suspect specific wrongdoing:

> The district court found CSI to be willfully blind. Since we have held that willful blindness is equivalent to actual knowledge for purposes of the Lanham Act, *Lee*, 875 F.2d at 590, this finding should be enough to hold CSI liable (unless clearly erroneous). But we very much doubt that the district court defined willful blindness as it should have. To be willfully blind, a person must suspect wrongdoing and deliberately fail to investigate. *Id.* The district court, however, made little mention of CSI's state of mind and focused almost entirely on CSI's failure to take precautions against counterfeiting. Mem.Op. at 5–6. In its conclusions of law, the court emphasized that CSI had a duty to take reasonable precautions. Mem.Op. at 7. In short, it looks as if the district court found CSI to be negligent, not willfully blind.
>
> This ambiguity in the court's findings would not matter if CSI could be liable for failing to take reasonable precautions. But *CSI has no affirmative duty to take precautions against the sale of counterfeits.* Although the "reason to know" part of the standard for contributory liability requires CSI (or its agents) to understand what a reasonably prudent person would understand, *it does not impose any duty to seek out and prevent violations*. Restatement (Second) of Torts § 12(1) & cmt. a (1965). We decline to extend the protection that Hard Rock finds in the common law to require CSI, and other landlords, to be more dutiful guardians of Hard Rock's commercial interests. Thus the district court's findings do not support the conclusion that CSI bears contributory liability for Parvez's transgressions.

*Hard Rock*, 955 F.2d at 1149 (emphasis added). *See also Tiffany (NJ) Inc. v. eBay Inc.,* 600 F.3d 93, 107 (2d Cir. 2010) ('For contributory trademark infringement liability to lie, a service provider must have more than a general knowledge or reason to know that its service is being used to sell counterfeit goods. Some contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary."). Here, as set forth above, there was no reason for Beer Garden to know that Calo was infringing, and no general duty to investigate her.   Indeed, comparison of these facts with a recent case involving the same marks illustrates the point.   As summarized by the Southern District of New York:

> To prevent trademark and copyright infringement, Slep-Tone performs regular investigations. In one such investigation, Slep-Tone concluded that Justine Davis, doing business as Nightstar DJ and Karaoke ("Nightstar"), hosted over 20 weekly karaoke events in New York City and Westchester County using Slep-Tone products and the Sound Choice mark in an unlicensed manner. Specifically, during the course of its investigation, Slep-Tone representatives observed Nightstar-affiliated karaoke hosts using and displaying the Sound Choice trademarks without Slep-Tone's consent and in violation of Slep-Tone's licensing restrictions. Slep-Tone eventually sued Nightstar for trademark infringement in a case that settled in June 2015. See *Slep–Tone Enter. Corp. v. Davis,* No. 14–CV–

> 7260–JPO. After the settlement with Nightstar, Slep-Tone analyzed one of Nightstar's computers and discovered that the computer contained over 20,000 Sound Choice-branded songs, although it had the right to maintain digital copies of only about 6,000 songs.
>
> Clontarfscouse paid Nightstar to provide karaoke services at its bar. **On June 25, 2014,** Slep-Tone observed a Nightstar-affiliated host using nonoriginal tracks and graphics depicted with the Sound Choice trademark. It sent Clontarfscouse letters **on September 23 and October 24, 2014**, warning Clontarfscouse **that Nightstar had infringed Slep-Tone's trademarks,** informing Clontarfscouse that the bar risked liability, and encouraging it to participate in Slep-Tone's "safe harbor" program to avoid liability. Notwithstanding its receipt of these letters, Clontarfscouse continued to host Nightstar karaoke events.

*Slep-Tone Entm't Corp. v. Golf 600 Inc.,* No. 14-CV-10040 (JPO), 2016 WL 3360522, at \*1 (S.D.N.Y. June 16, 2016)(emphasis added). Against this background, the New York court had no difficulty finding Clontarfscouse liable for Nightstar's infringement, noting:

> As discussed above, Clontarfscouse provided services to Nightstar. It also had the requisite knowledge. Once Clontarfscouse received warning letters from Slep-Tone, it "knew or had reason to know" that Nightstar was infringing on Slep-Tone's trademarks. This knowledge was more than "general knowledge" or "reason to know" of the infringement. *Tiffany*, 600 F.3d at 107. Clontarfscouse's relationship was with "***identified individuals known by it to be engaging in continuing infringement** ....*" *Id.* at 108 (quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 469 n. 19, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984)). That is sufficient evidence that Clontarfscouse knew of **"specific instances of actual infringement."** *Id.* at 107; see *id.* at 109 ("A service provider is not, we think, permitted willful blindness."); see also *Coach Inc. v. Goodfellow*, 717 F.3d 498, 504 (6th Cir.2013); *Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F.Supp.2d 228, 249 (S.D.N.Y.2010). And despite this knowledge, Clontarfscouse continued to contract with Nightstar, benefiting from the ongoing infringement.

*Slep-Tone Entm't Corp.* 2016 WL 3360522, at \*4 (some emphasis supplied). By contrast here, the October letters to Beer Garden made no mention of specific infringements by Calo (and did not mention Calo at all), and were delivered *prior* to any investigation at Beer Garden. On the showing (or lack thereof) made here, no liability as a contributory infringer can lie.

Plaintiff also claims that Beer Garden is liable for false designation of origin under 15 U.S.C. § 1125(a) and unfair and deceptive trade practices under Fla. Stat. § 501.204, because the elements of a claim for trademark infringement and for federal unfair competition are the same and engaging

in trademark infringement is an unfair and deceptive trade practice that violates FDUTPA.[7] Plaintiff, however, relies solely on the same allegations and proof which the Court has determined to be insufficient to impose vicarious or contributory liability for infringement. For similar reasons, therefore, Plaintiff has not established entitlement to a judgment on these counts.

Because Plaintiff has not established that Beer Garden is liable for any of the counts of the Amended Complaint, Plaintiff is not entitled to the relief it seeks, namely, an entry of an award of statutory damages, seizure of the infringing articles, a permanent injunction, and inclusion of specific language to assist in judgment collection. Indeed, even if Plaintiff were to have prevailed on the issue of liability, it would still not be entitled to the relief sought. Plaintiff advises that it settled with Calo (Doc. 24, n.1) and Calo has been dismissed, with prejudice. To the extent Plaintiff has recovered damages from Calo, this amount must be set off from any amount to which Plaintiff would be otherwise entitled to. *See* Fla. Stat. 46.015 (2016); *J.R. Brooks & Son v. Quiroz,* 707 So.2d 861, 863 (Fla. 3d DCA 1998) ("damages for which the nonsettling defendant is ultimately responsible must be reduced pro tanto by the amount obtained from any settlement previously entered into between the injured party and the person who actually committed the negligent act") (quotation omitted); *Chetu, Inc. v. Salihu,* No. 09-60588-CIV, 2010 WL 1372329, at *2 (S.D. Fla. Apr. 2, 2010) ("It is well-established that a plaintiff who has recovered any item of damage from one co-conspirator may not again recover the same item from another conspirator; the law, that is, does not permit a plaintiff to recover double payment.") (internal quotation omitted). As Plaintiff has not accounted for that settlement in its papers or at hearing, it has not established entitlement to the damage award it seeks. Moreover, as noted at hearing, Calo is now in full compliance with

---

[7] FDUPTA outlaws "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204. "In order to state a claim under FDUTPA, Plaintiff must establish: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Ghostbed, Inc. v. Casper Sleep, Inc.,* No. 15-CV-62571-WPD, 2016 WL 4145909, at *3 (S.D. Fla. July 19, 2016).

Plaintiff's policy regarding its marks. As such, there is no likelihood of future harm and thus no "irreparable injury" justifying injunctive relief.

Without question, Plaintiff is entitled to police and enforce the appropriate use of its marks. The extent of this authority, however, does not relieve it of the obligation to support its claims of infringement against any and all defendants, even those who have defaulted. On the present record, Plaintiff has failed to do so here.

**Conclusion**

For all the reasons set forth above, it is respectfully recommended that the motion be **denied.** As Plaintiff has not been able to establish liability or damages with respect to this Defendant, despite numerous opportunities to do so, it is further recommended that this action be **dismissed**.

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on September 16, 2016.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy